

**MICHAEL A. CARDOZO**
*Corporation Counsel*

# THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**LIZA SOHN**
Assistant Corporation Counsel
phone: (212) 788-0715
fax: (212) 788-9776
email: lsohn@law.nyc.gov

May 17, 2013

<u>BY ECF</u>
Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:    <u>Alexander Riley v. City of New York, et al.</u>,
                      10 CV 2513 (ENV)(RML)

Your Honor:

      I am an Assistant Corporation Counsel in the Office of Michael A. Cardozo, Corporation Counsel of the City of New York, and the attorney assigned to represent defendants in the above-referenced matter. Pursuant to Your Honor's Order dated April 14, 2013, defendants write to provide a status report and to state their position regarding the hearing which has been scheduled for June 6, 2013 concerning false and/or perjurious testimony and witness tampering.

      By way of background, plaintiff filed this complaint on or about June 2, 2010, alleging, among other things, that he was falsely arrested and subjected to excessive force. During the course of discovery and depositions, defendants became concerned that at least one "eyewitness" statement produced by plaintiff contained entirely false statements and, in fact, had not even been written by the purported witness who disavowed even being at the scene of plaintiff's arrest. Upon raising this concern with this Court, defendants were permitted to re-open the deposition of plaintiff for the purpose of inquiring into how and when the "eyewitness" statement had been procured. Plaintiff was re-deposed on May 14, 2013.

      Defendants now respectfully submit that sufficient evidence has come to support their belief that that plaintiff Alexander Riley and his fiancée, Felicia Dindyal, created a false statement, induced non-party witness Deirdre Colon to sign it, and produced that false statement as evidence to support plaintiff's claims. Defendants respectfully submit that plaintiff's fraudulent attempt to bolster his case has so marred the integrity of this action that dismissal of the complaint in its entirety is appropriate. In addition, defendants request that this matter be referred to the U.S. Attorney's Office and the District Attorney's Office for perjury and witness tampering on the part of plaintiff and Ms. Dindyal.

There is precedence in this District for imposing sanctions for dishonest statements made during discovery. In Carter v. City of New York, 11-CV-2899 (WFK)(VVP), 2012 U.S. Dist. LEXIS 87186 (E.D.N.Y. June 23, 2012), a hearing was held because plaintiff had lied under oath at her deposition about her contact with a potential non-party witness. After the hearing, the Court concluded, based on internal inconsistencies and contradictions between plaintiff's statement and that of her brother, that plaintiff had lied. Stating that "false testimony under oath cannot be ignored," the Court sanctioned the plaintiff by permitting an adverse inference at trial. Id., at *9.

Defendants respectfully submit that the actions of the plaintiff and Ms. Dindyal in this matter are far more egregious than the actions of the plaintiff in Carter where the plaintiff lied about an issue collateral to her claim and, accordingly, warrant more stringent sanctions. Specifically, plaintiff Alexander Riley, and Felicia Dindyal, fabricated evidence regarding the incident itself, creating a document containing misstatements about facts central to plaintiff's false arrest and excessive force claims and then induced a purported "witness" to sign that statement. As will be demonstrated below, however, Ms. Colon, the "witness," was not even present at the time of plaintiff's arrest. Plaintiff's manufacture of such purported relevant facts has entirely tainted the integrity of this litigation, has resulted in a waste of the resources of the taxpayers, the City, this office, and the Court, and should not be tolerated.

**I.**   **The Entirety of The "Eyewitness" Statement Proffered by Plaintiff is False**

Ms. Colon unequivocally testified that, not only was she not present at the scene of plaintiff's arrest, but that she did not write the statement or even read the statement before she signed it and that none of the statements contained therein are true.

**The Witness Did Not Write The Statement**

> Q: If you take a look at the first page of the document, do you recognize the handwriting on that page?
> A: I don't recognize it. I know it's not my handwriting, but I don't – I can't tell you whose handwriting it is.
>
> * * *
>
> Q: Other than your signature on the second page, is there anything in this exhibit that you wrote yourself?
> A: No. (Ex. A: Colon Dep. Tr. 49:5-9; 50:2-4)
>
> * * *
>
> Q: Okay. Did you read this document before you signed it?
> A: No. (Ex. A: Colon Dep. Tr. 57:17-19)
>
> * * *
>
> Q: Were you in the vicinity of Coney Island on that day?
> A: No. There's no way I could have been.
> Q: Why is that?

A: Because I was either working or I went straight home and then went to the gym. That was my routing, or I was at . . . visiting my husband after work. (Ex. A: Colon Dep. Tr. 43:18-22)

\*\*\*

Q: Did you see any part of the incident for which Alexander Riley is suing the City of New York?
A: I did not witness anything in terms of the incident.
Q: And you were nowhere near the area at all?
A: I didn't even know how to get to that part of Brooklyn at that point.
Q: So you never saw Mr. Riley arrested?
A: Never saw it.
Q: You never saw him getting hit by officers?
A: Never saw it.
Q: Never heard any screeching as a van pulled up?
A: Never heard it.
Q: You never saw police officers hitting him with a walkie-talkie?
A: Never saw that. (Ex. A: Colon Dep. Tr. 44:10-25)

\* \* \*

Q: Can you read it into the record, please, just the first sentence?
A: "On the said date and time of 2/27/2008 at approximately 6:15 p.m., Deirdre Colon had been walking northbound towards Coney Island Avenue at end, Neptune."
Q: Okay. Is that true?
A: No. (Ex. A: Colon Dep. Tr. 59:23-25; 60:1-4)

\* \* \*

Q: Can you read the next sentence into the record?
A: "As I approached the middle of the block next to a barbershop called" – I didn't – I can't really read what the barbershop is called" . . . "I heard a screeching tire sound. When I had looked over my shoulders across the street, I notice . . . white van type of vehicle stop suddenly."
Q: Okay, that's good. Is what you just read true?
A: No.
Q: Can you continue reading?
A: "At that very moment, there appeared to be a white male that" something "the passenger side of a vehicle. The white male dress (sic) in plain clothing had approached a black male in plain clothing." I don't know what a few of those words say. I think, "The black male was entering a green vehicle. The black male had been halfway in his vehicle and halfway out of the doorway of that vehicle when I witnessed the white male grab the black male around the neck area and" something "choke hold move from behind."

Q: You can stop there. Is that true?

(Objection by plaintiff's counsel)

Q: Did you observe that?
A: No.
Q: Is that true?
A: Any of this true?
Q: Yes.
A: None of this is true. (Ex. A: Colon Dep. Tr. 60:9-25; 61:1-15)

## II. Plaintiff and Felicia Dindyal Were Complicit in Procuring The False Statement

As evidenced by deposition testimony as well as text message communications between Felicia Dindyal and Ms. Colon, Ms. Dindyal solicited Ms. Colon to sign the statement containing the false statements, plaintiff provided Ms. Colon with certain parameters for the false statement, and both plaintiff and Ms. Dindyal made arrangements with Ms. Colon to retrieve the false statement.

Q: What are the circumstances that led up to your signing this document?

A: I had a conversation with Felicia and she said that her boyfriend was in a lawsuit, he needed some witnesses, some good standing people to help him out. I said, "Yeah, no problem." I said, "I'll do it, no problem." She said, "Okay." She said, "I just need you to take this, get it notarized, make a copy for yourself and try to remember it." I said, "Yeah, no problem." It's – it's free for me to get stuff notarized at my job. A lot of the girls are notaries, and that's what I did and I just had it notarized. I made a copy for myself and that was it. (Ex. A: Colon Dep. Tr. 48:1-13)

* * *

Q: Did you tell her it had to be signed?
A: Yes
Q: You did?
A: Yes.
Q: Did you tell her that the statement had to describe the incident and what she saw?
A: Yes.
Q: Did you tell her that her name had to be on the document?
A: Yes.
Q: Did you tell her that the date of the incident had to be on the document?
A: Yes. (Ex. B: Riley Dep. Tr. 68:19-69:6)

* * *

- 4 -

      Felicia:      Hey dei alex is gonna call you today
      Deirdre:     K boo
                      Deirdre T. Colon
                      [Colon's address, omitted to protect her privacy]
      Felicia:      Thank you so much I appreciate it
      Deidre:      No problem boobie ;)

(Ex. C: text messages between Deirdre Colon and Felicia Dindyal, March 9, 2012, 7 a.m.)

These text messages were sent from a phone shared by plaintiff and Ms. Dindayl. In fact, the telephone number from which Ms. Dindyal sent and received these text messages is the same telephone number that plaintiff identified on the docket sheet in this matter as his telephone number. (Docket Entry 25; Ex. B: Riley Dep. Tr. 110:8-111:4; 116:9-19)  Thus, both Alexander Riley and Ms. Dindyal were complicit in procuring the false statement from Ms. Colon for the purpose of advancing plaintiff's claims against the defendants.

### III.    Plaintiff and Felicia Dindyal Induced The Witness to Sign The False Statement

Deirdre Colon testified that she received assurances that she would not have to testify in this matter, and later expressed discomfort at her increased involvement:

      Q:      Right, so what was your understanding in the first place and then how did that change after?
      A:      Just that, you know, hey, something happened, they're trying to win a lawsuit against the City and they used my name.
      Q:      Right.
      A:      Say sure, nonchalantly without really thinking it through at all. Got this notarized, of course we all know that, and then when it – and this was explained to me, said never have to come to court, never have to be involved in depositions, never are [sic] to deal with judges, lawyers, nothing. That's what was explained to me.
      Q:      Right.
      A:      As soon as everyone started calling –
      Q:      Would you consider that influence?

      (Objection by plaintiff's counsel)

      A:      That was probably the reason I agreed to it.
      Q:      Right.
      A:      That what I thought it was going to be, a no big deal, fine, but my name on the witness list, great.
      Q:      And then –

A: If I would have known it would have been involved with police, involved with police attorneys, plaintiff's attorneys, I would be like no, I'm not with it, not my thing. (Ex. A: Colon Dep. Tr. 95:2-96:1)

* * *

Deirdre: u know when I agreed to this I thought it was explained I wouldn't have to testify or have involvement in depositions . . . I honestly don't feel comfortable with where its headed . . . I shouldve thought it through before I agreed

(Ex. C: text messages between Deirdre Colon and Felicia Dindyal, July 23, 2013)

## IV. Colon's Statement Calls into Question the Veracity of All Witness Statements

That Ms. Colon's statement was unlawfully procured is further evidenced by the fact that, although plaintiff testified that he observed Ms. Colon at the scene of the incident, he never named her as a witness in his initial Rule 26(a) disclosures, in his response to defendants' interrogatories and request for documents, or to IAB or CCRB investigators. In fact, none of the three statements purportedly made by "eyewitnesses," (Deirdre Colon, Tremaine Jernigan, or Romain Dindyal) were identified by plaintiff as witnesses either at the time he filed a complaint with the CCRB, or in his statement to IAB. Nor were any of these three individuals identified in plaintiff's initial Rule 26(a) disclosures. Moreover, in the context of all the other evidence presented, the similarities in the statements of Deirdre Colon, Tremaine Jernigan, and Romain Dindyal raise a suspicion that the statements were coordinated.[1] (Ex. D: statements signed by Deirdre Colon, Tremaine Jernigan, and Romain Dindyal)

## IV. Felicia Dindyal Testified Untruthfully Under Oath

---

[1] All three statements use similar words, sequence of events, and even spelling errors-- for example, a "screeching" sound and "waste band" (not "waist band"). For the Court's convenience, below is a chart with striking similarities between all three statements submitted by plaintiff in this case.

| **Tremaine Jernigan** | **Deirdre Colon** | **Romain Dindyal** |
|---|---|---|
| Loud **screeching** sound | **Screeching** tire sound | Loud **screeching** noise |
| Barbershop (f-katz) | Barbershop called (f-katz) | F-katz barbershop |
| White male exit the passenger side of the vehicle | White male that exited the passenger side vehicle | White male hopped out the passenger side |
| I then notice the white male reaching for his **waste band** with his right hand. I then witness the white male hit Mr. Riley with what appeared to be a **walkey talkey**. | …I noticed the white male pull a black square object (**walkey talkey**) from the side of his **waste band** and strike the black male on the back of his head | …I noticed the white male grab a **walkie talkie** and hit Alex. |
| The **white man stood over Mr. Riley until a Spanish male had approached** and handcuffed Mr Rileys hands | The black male had fallen to the ground and **the white male had stood over the black male until a Spanish male had approached seconds** later | …another officer maybe Hispanic or a tanned white male handcuffed Alex |

Ms. Dindyal's deposition testimony contradicts the statements of Alexander Riley, Deirdre Colon, and non-party witness Tremaine Jernigan in an apparent effort to distance herself from the witnesses. For example, Ms. Dindyal testified that she had very little contact with Colon, when the text messages and Colon's testimony indicate that they were friendly. (Ex. E: Dindyal Dep. Tr. 63:6-64:17). Similarly, Ms. Dindyal testified that she knew Tremaine Jernigan for only a few months prior to the date of the incident, whereas Jernigan testified that they were good friends and had known each other for five years. (Ex. E, 74:4-74:13). Finally, Felicia testified that that neither she nor Alexander Riley requested a statement from Deirdre, which contradicts the testimony of both plaintiff and Ms. Colon. (Ex. E, 66:7-66:13).

**Conclusion**

For these reasons set forth herein, defendants respectfully submit that sufficient evidence exists for a hearing on the issue of witness tampering and witness solicitation by plaintiff and his fiancé Felicia Dindyal and, accordingly, plaintiff's complaint should be dismissed and that the issue of perjury and/or witness tampering should be forwarded to the U.S. Attorney's Office.

Thank you for your consideration herein.

Respectfully submitted,

_____/s/_____

Liza Sohn
Assistant Corporation Counsel

cc: Anthony Ofodile, Esq. (by ECF)